ORIGINAL

FILED-CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

05 AUG -1  PM 4: 25

TX EASTERN-MARSHALL

BY_____

| | | |
|---|---|---|
| TINKERS & CHANCE, <br> a Texas partnership, | § § § | |
| Plaintiff, | § § | Civil Action No __2-05CV-349 TJW__ |
| vs. | § § | |
| LEAPFROG ENTERPRISES, INC., <br> a Delaware corporation, | § § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § | |

## Original Complaint for Patent Infringement and Demand for Jury Trial

Plaintiff Tinkers & Chance ("Tinkers & Chance") allege the following in support of its Complaint for Patent Infringement against Defendant LeapFrog Enterprises Inc. ("LeapFrog").

### THE PARTIES

1. Tinkers & Chance is a Texas partnership that maintains a place of business at 2505 N. Plano Road, Suite 5100, Richardson, Texas 75082.

2. LeapFrog is a Delaware corporation, whose principal place of business is 6401 Hollis Street, Suite 100 Emeryville, CA 94608-107118.

### JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the laws of the United States, including 35 U.S.C. § 101 et seq. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 (a).

4. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400, because, inter alia, LeapFrog markets, offers and/or sells infringing products to customers who reside in, or may be found in, this district.

## PATENT IN SUIT

5. Since 1995, Tinkers & Chance has been developing and is the owner of a patent portfolio in the field of educational learning tools. As of the filing date of the present action, Tinkers & Chance's patent portfolio consists of six (6) issued patents including United States Patent No. 6,739,874 (the "'874 patent" and "patent-in-suit") titled "Electronic Educational Toy Appliance Teaching Letters Words and Numbers" issued May 25, 2004 (attached to this Complaint as Exhibit 1).

6. Tinkers & Chance's patent portfolio also includes more than ten (10) pending applications. All of the patents and patent applications in Tinkers & Chance's patent portfolio benefit from a 1995 filing date.

7. Tinkers & Chance is in the business of forming business relationships with companies such as LeapFrog so the companies can lawfully practice under Tinkers & Chance's patented technology. Tinkers & Chance contacted LeapFrog at least three times since 2002 in an effort to negotiate a mutually beneficial relationship with LeapFrog.

8. On or about October 29, 2002, Tinkers & Chance wrote a letter to Michael C. Wood, Founder and then-President and Chief Executive Office of LeapFrog and Mark B. Flowers. In the October 29, 2002 letter, Tinkers & Chance wrote:

> ... I write because Tinkers & Chance and Leapfrog should meet and begin working together. Tinkers & Chance is uniquely situated to provide Leapfrog with top-notch patent protection for Leapfrog's products. The need for this protection is magnified as companies such as VTech begin marketing and selling products which are clear knock-offs of Leapfrog products ...

Tinkers & Chance has designed its patent portfolio to cover many of the leading smart toy products on the market today. For example, Tinkers & Chance has patents pending, all with 1995 priority dates, that will:

- prevent companies, such as VTech, from marketing and selling products that imitate Leapfrog's Leappad® learning system;

- prevent companies from marketing and selling internet-enabled smart toys or products that imitate Leapfrog's Mindstation™ product;

- prevent companies from marketing and selling products that imitate Leapfrog's Turbo Twist® line of products.

The value of Tinkers & Chance's patent portfolio to Leapfrog is tremendous. It would provide Leapfrog with the tools to protect and expand its valuable lead in the growing and increasingly competitive smart toy industry.

We recommend scheduling a meeting shortly. The meeting will allow Tinkers & Chance and Leapfrog to explore a mutually beneficial business relationship.

9. Leapfrog never responded to Tinkers & Chance's October 29, 2002 letter.

10. Tinkers & Chance wrote to LeapFrog again in September 2004.

11. On or about September 24, 2004, Tinkers & Chance wrote a letter to Sasha Pesic, Worldwide Litigation Counsel for LeapFrog. In the September 24, 2004 letter, Tinkers & Chance notified LeapFrog that the claims of the '874 patent read on Leapfrog's Leapster, My First LeapPad, LeapPad, and LeapPad Plus Writing product lines.

12. The September 24, 2004, letter stated:

> . . . We have compared a number of Leapfrog's products against Tinkers & Chance's patent portfolio. The claims of the '874 patent as well as the claims of a number of the pending patent applications in the portfolio read on Leapfrog's Leapster, My First LeapPad, LeapPad and LeapPad Plus Writing product lines.
> . . . The claims of pending applications in the portfolio also read on a number of other Leapfrog educational toys such as its Mind Station and Turbo product lines.

13. In the September 24, 2004 letter, Tinkers & Chance advised LeapFrog that its potential exposure under Tinkers & Chance's patent portfolio "could run in excess of $25 million for 2004 alone and $600 million for the life of the patents." Tinkers & Chance offered a

"discounted royalty structure" if "Leapfrog . . . negotiate[d] in earnest and consummate[d] through business negotiations a licensing transaction with Tinkers & Chance within a reasonable period of time":

> We would like to start working with you to structure a license to grant Leapfrog all of the rights it needs under Tinkers & Chance's patented technology. Leapfrog's recent public announcements indicate that Leapfrog's annual covered sales could be in excess of $500M in 2004. The standard royalty rate in the toy industry is 5%. See the Toy Industry Association's website at www.toy-tia.org. Tinkers & Chance uses 5% - 6% as its standard royalty rate. Therefore, a standard license to Leapfrog could run in excess of $25 million for 2004 alone and $600 million for the life of the patents. . . . Tinkers & Chance is willing to offer Leapfrog for a limited period of time a discounted royalty structure. To obtain the benefit of this offer, Leapfrog must negotiate in earnest and consummate through business negotiations a licensing transaction with Tinkers & Chance within a reasonable period of time.

14. In the September 24, 2004 letter, Tinkers & Chance reminded LeapFrog that Tinkers & Chance had contacted LeapFrog in 2002 feeling that "Leapfrog would benefit from purchasing Tinkers & Chance's patent portfolio rather than licensing it to obtain all of the rights of patent ownership." Tinkers & Chance attempted to schedule a meeting with LeapFrog to discuss how to proceed:

> Finally, we note that we previously contacted Leapfrog in October 2002. A copy of a letter we wrote to Leapfrog's founder, Michael Woods is attached. . . . We felt then and still feel now that Leapfrog could benefit from owning Tinkers & Chance's portfolio. A copy of a presentation describing the benefits of Leapfrog owning the portfolio is also included.
>
> We think it would be highly beneficial to set up a meeting to discuss how best to proceed after Leapfrog has an opportunity to study this letter and the included materials.

15. LeapFrog never responded to Tinkers & Chance's September 24, 2004 letter or Tinkers & Chance's offer of a discounted royalty structure contained therein. Tinkers & Chance wrote once more to LeapFrog in February 2005.

16. On or about February 2, 2005, Tinkers & Chance wrote to Sasha Pesic, Worldwide Litigation Counsel for LeapFrog. In the February 2, 2005 letter, Tinkers & Chance reminded LeapFrog of its need to negotiate a license and expressed frustration at LeapFrog's refusal to respond.

17. The February 2, 2005, letter stated:

> We have not received any response to our letter dated September 24, 2004. It is regrettable that LeapFrog Enterprises, Inc. ("LeapFrog") has so quickly adopted a disobliging stance without even exploring the possibility of a license that would be reasonable to both sides. As described in the September 24 letter and the attachments thereto, Tinkers & Chance owns an array of patents and patent applications covering many of LeapFrog's most successful products. We remain convinced that a negotiated solution is the most sensible and cost-effective way to proceed.
>
> I would like to discuss with you at your earliest convenience LeapFrog's position and how LeapFrog would like to address this matter.

18. Leapfrog never responded to Tinkers & Chance's February 2, 2005 letter.

## FIRST CAUSE OF ACTION

### (Infringement of U.S. Patent No. 6,739,874)

19. Paragraphs 1-18 above are incorporated herein by reference.

20. Tinkers & Chance owns all right, title, and interest in the '874 patent.

21. LeapFrog has infringed one or more claims of the '874 patent by, without authority, (1) making, selling and/or offering for sale in the United States and/or importing products, including without limitation the LeapPad® and the Leapster™, that infringe one or more claims of the '874 patent, and/or (2) actively inducing and/or contributing to others' infringement of the '874 patent.

22. LeapFrog has had actual and constructive knowledge of the '874 patent, and LeapFrog's infringement of the '874 patent has been and is willful, deliberate, and will continue

unless enjoined by this Court. Under 35 U.S.C. § 284, Tinkers & Chance is entitled to damages for infringement and treble damages.

23. LeapFrog's infringement of the '874 patent has been without license from Tinkers & Chance and in violation of Tinkers & Chance's patent rights. Tinkers and Chance has provided multiple notices to LeapFrog of its infringing activities, which notices have been ignored. It is believed that LeapFrog will continue to infringe Tinkers & Chance's patent rights unless enjoined by this Court.

24. Leapfrog's infringement of the '874 patent has caused and will continue to cause Tinkers & Chance irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Tinkers & Chance is entitled to a permanent injunction against further infringement.

25. Under 35 U.S.C. § 285, this case is exceptional and Tinkers & Chance is entitled to attorney's fees accrued in pursuing this action.

## PRAYER FOR RELIEF

WHEREFORE, Tinkers & Chance respectfully requests this Court enter judgment:

1. That LeapFrog has infringed the patent-in-suit;

2. That LeapFrog's infringement of the patent-in-suit has been willful and deliberate;

3. Preliminarily and permanently enjoining LeapFrog and its respective directors, officers, employees, agents and all persons in active concert or participation with them from further acts of infringement of the patent-in-suit;

4. Awarding to Tinkers & Chance against LeapFrog damages adequate to compensate Tinkers & Chance for the patent infringement by LeapFrog, not less than the amount

of a reasonable royalty, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of LeapFrog's willful infringement;

5. Awarding Tinkers & Chance prejudgment and post-judgment interest against LeapFrog as allowed by law;

6. Declaring this case exceptional under 35 U.S.C. § 285 and awarding Tinkers & Chance its costs and attorney's fees; and

7. Awarding Tinkers & Chance such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: August 1, 2005

Respectfully submitted,

Phillip B. Philbin
Texas State Bar No. 15909020
HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
Tel: 214-651-5000
Fax: 214-651-5940

Clyde M. Siebman
Texas State Bar No. 18341600
SIEBMAN, REYNOLDS, BURG & PHILLIPS, L.L.P.
Federal Courthouse Square
300 N. Travis
Sherman, Texas 75090
Tel: (903) 870-0070
Fax: (903) 870-0066

ATTORNEYS FOR PLAINTIFF,
TINKERS & CHANCE